May it please the Court, good morning. Your Honor, it's Mark Friedman on behalf of Appellant Kevin Tubbs. I would like to reserve three minutes if possible. Your Honor, there are three issues that I'd like to address to the Court this morning. The first is the need to incorporate the Meyerhoff brief and arguments. They were included with our reply brief as a supplemental exhibit. The second issue that we're going to do is to address is the need to incorporate those arguments. They're not supposed to actually make the argument. You don't do it by appending it to a reply brief under the rule. I'm sorry, Your Honor. We actually had included those arguments as part of our initial brief. What we had done was referred to those arguments in our initial brief. We did not spell all those issues out because they had, in fact, already been argued fully in the Meyerhoff case and, in fact, are directly related to the issues that were presented. Why don't we do this? I haven't had a chance to confer, obviously, with my colleagues here. I have a concern procedurally as to whether those arguments are properly before us. Why don't you go ahead and make your arguments on the points that you want to cover, bearing in mind that the Court may or may not consider the arguments from the Meyerhoff case? Thank you, Your Honor. It is true you didn't make any motion to consolidate, true? That's correct, Your Honor. We actually, we had referred to that as the third argument in our original brief. And then again, when we received, we had understood that the government was intending to consolidate all these cases. It wasn't until we had actually received the government's response that we understood that the Meyerhoff appeal, in fact, was going to be dismissed. Just by way of a practice pointer, my suggestion next time is move to consider those by a formal motion. That's the safest way to protect your position. Understood. Since I'm talking about this, I'll just keep going. Your Honor, with regard to the Meyerhoff issues, there actually are three that we think are integral to this case. The first is the fact that there is the definition of the terrorism enhancement, what it constitutes. And the issue there is the injury requirement. The second is whether or not that the definition as provided for the enhancement, whether it refers to Federal government or whether it is State and local government. And again, this is important with regard to specific counts for Mr. Tubbs. And finally, and sort of a key issue throughout, is what constitutes government action, because that is one of the focus, the motivational element. Mr. Friedman, perhaps you could address for me the concern I have with regard to Mr. Tubbs. Because he is very heavily involved in this conspiracy from beginning to end, and by his own admission, was involved in multiple arsons in furtherance of the goals of the conspiracy. You're not arguing that the district court could not consider all of these various activities as part of relevant conduct in fashioning an appropriate sentence, are you? Absolutely not, Your Honor. Absolutely not. With regard to whether or not the terrorism enhancement applies, particularly with regard to Mr. Tubbs, what's unreasonable about the sentence that the district court actually imposed, given the length and extent of Mr. Tubbs' criminal activity? Again, one of the key elements of the enhancement itself is not only does it move somebody up to a level, a minimum of a level 32, but more significantly, it changes their criminal history. And it's undisputed that with regard to Mr. Tubbs, he had no prior criminal history. I understand all that. Maybe what I'm really asking in kind of a roundabout way is that if the guidelines are truly advisory and no longer mandatory, and the district court is presented with a record of very extensive criminal activity, why is it impermissible under the current state of Ninth Circuit and Supreme Court sentencing law for the defendants have done and decide that a sentence that is less than the statutory maximum, but a tough sentence nonetheless, but higher than what the mandatory guidelines might have required, why is that an unreasonable sentence on this record? Well, again, Your Honor, we would have to look specifically at what the district court did in this case. And there's no question we assert that the district court did consider the terrorism enhancement, did consider that as an integral part in terms of arriving at the sentence that the court ultimately arrived at. I think had that not been part of the conscious decision that was made in this case, I think we would submit that a very different sentence would have been achieved. I'm not disputing that the court has that right to consider that, but that's not what occurred here. What occurred here was the court went through the formula, and again, that's one of the issues that we dispute here, but went through a formula to determine that the In fact, the court actually said that her ultimate decision was in terms of looking at specific counts. It didn't matter. In fact, with regard to a number of counts, she did not decide the court did not decide whether the enhancement applied or whether a 5K enhancement applied. She said it didn't matter because of her ultimate decision based upon the fact that she was already up to a level well beyond a level 32 in this case. And again, that's specifically because if we look at the Oak Ridge, which is one of the issues I want to get to here, if we look at that, that puts them at a level 35 already. And again, that's based upon the enhancement. So in response to what you're asking, Your Honor, if the court had gone through that, it's possible. And we would submit if the court, this Court decides to remand this for resentencing, it is possible, but that's not what occurred here. Aren't we under a clear error standard or a plain error standard here in determining whether there was any violation on the terrorism enhancement? We would, Your Honor, we would submit that, again, we've argued that the appropriate review of this should have been plain error is the question. But with regard to the considerations here, we would argue that Apprendi does apply, that the findings that were necessary were beyond reasonable doubt. Well, Apprendi violations only occur when the statutory maxim has exceeded, isn't it? That's correct. So the statutory maximum was not exceeded here? Arguably, the end result was not. On the individual counts, it was. Well, and as I understand it, the district court also applied these enhancements to three other arsons in the sentencing, and you haven't even appealed or challenged those sentences. We have, Your Honor. Again, that goes back to this issue of the Meyerhof brief. Okay. Specifically with regard to the Meyerhof brief. If we go to Meyerhof, is where you challenged those? Yes. That's actually our third. If the Court looks at the original brief, the third argument we made incorporates that. I'm about to run out of time. Again, what I'd want to ask the Court to think about here is that even if the Court says that it was a clear and convincing standard, we submit that the district court did not apply that even-handedly, specifically with regard to count 2, the Oak Ridge count. And the reason is that the Court made certain findings with regard to specifically the motivational element. The Court used the phrase temporal proximity to this Warner Creek, which had been a prior civil disobedience about a year earlier. And we submit it's basically using these prior acts as proof that a subsequent act occurred. But why isn't that relevant conduct? That gets back to the question I asked earlier. I mean, the district court is basically faced with an entire record of criminal behavior by the defendant. What's improper about looking at the prior acts involving the logging industry and so on in order to explain why these arsons occurred later in the defendant's criminal escapades? Your Honor, because the district court actually, when they applied the enhancement on other counts, they did look specifically with regard to whether or not there had been communiques, and it was from these communiques that they openly, that the Court openly discerned whether or not this intent to coerce government was there. But as I understand what the district court said, it wasn't just the communiques. It was particularly with regard to Mr. Tubbs, because of the extensive involvement that he had had, the Court could look at this relevant conduct and, from all of the evidence before it, conclude what his motivation was. It didn't have to rely exclusively on it. But that's not what the, again, we would submit, Your Honor, that's not what the Court did, because if you look at the record with regard to Oak Ridge, the Court made that claim. But it's in the pre-sentence report. I mean, it's all laid out, is it not, in terms of his prior relevant conduct? Again, you look at his role in this. His role was, although he, in terms of time, he was involved in this business for far too long. But if you look at his role, his role was typically as a driver or as a lookout in these cases. And we would consider that in terms of weighing that against the conduct that other individuals had. Well, you're not denying that he aided and abetted, are you? No. I mean, in that regard, the law punishes him as a principal. So I'm not sure what that argument gets you. No. I mean, there's, for instance, the Jefferson Poplar. We know that he wasn't even present at that fire, and yet he was implicated because he had been there at a prior. I'm about out of time. I could reserve a moment. Okay. Let's have a minute, rebuttal. In police court, Stephen Pfeiffer for the United States. Last year, Judge Aiken sentenced ten defendants for their roles in a five-year conspiracy that involved over 20 arsons in five Western states. There were 12 separate sentencing hearings. Two of the defendants actually were resentenced at their own request. The sentences ranged from 156 down to 37 months. In each defendant's case, Judge Aiken meticulously detailed her guidelines, findings, and calculations, and gave the reasons for her sentence any departures or variances. Every imaginable factor was heard, considered, and ruled on by the court. Now, Tubbs received a 151-month sentence for his involvement in ten arsons and attempted arsons from 1996 through 2001. The damages from those arsons alone were over $10.6 million. I think that indicates the magnitude of these crimes and the reasonableness of the sentence that he received. Now, as far as incorporating Mr. Meyerhoff's brief, wholesale in this case, it simply can't be done under Rule 28I. The defendant says that he referenced the arguments in his opening brief, his blue brief. All he did there was simply say he was incorporating Meyerhoff's brief. He didn't say what the arguments were. Sentencing is a very fact-specific matter for the court. That's why the cases say that you, generally speaking, you can't incorporate sentencing arguments. In the rare cases in which you can, there has to be a consolidation. There has to be basically co-defendant or co-appellant status, and that isn't present here. There was no consolidation of appeals, and the government didn't move to consolidate in these cases for that very reason, that the cases were so different factually. You look at Tankersley, Paul, Meyerhoff, and Tubbs, they're all over the board as far as what they did and what their sentences were. So it wouldn't have been proper to incorporate or to consolidate the cases. As far as the merits, if the court were to get to the merits of the Meyerhoff arguments, Judge Aiken rendered a 46-page opinion prior to sentencing. It deals in great depth with each one of these arguments, the injury requirement is not in the statute. There is no injury requirement. The federal crimes of terrorism include a number of crimes, including computer crimes, that have nothing to do with injuring people. Congress decided that that was not a requirement. It's not specified in the definition of a federal crime of terrorism. As far as whether it's federal or state or local, it just says government. When Congress wants to apply something to the federal government, it says the federal government. In this case, it applies to any government, and that's the way it's been interpreted in other circuits, and Judge Aiken has put those opinions from other circuits in her opinion. The Apprendi issue, as the Court noted, is simply not before the Court. It wasn't raised below, and it's not really an Apprendi issue. The most defendant can get out of this is an argument that there was, as he makes today, that there was some type of factual insufficiency for the Court's determination that there was a substantial risk of injury and that the arson was in retaliation against the government. And there are ample facts in the record to show that. The Court noted, and there was testimony by a Forest Service employee, a firefighter, noting the magnitude of the fire, the fact that someone periodically slept there at the Oak Ridge Ranger Station. Fortunately, it wasn't there that night, but according to the firefighter, when they got on the scene, the entire building, this historic large building, was completely engulfed in flames, and there would have been no way to save anybody at that time. Clearly, the arson was in retaliation against the federal government, against the Forest Service. Tubbs admitted that he had engaged in protest activities at Warner Creek, which was the big protest that was connected to the Willamette National Forest. You can find that at Excerpt of Record 178, in which he admits his protest activities against the government in connection with Warner Creek. Also, during the sentencing argument, the defense counsel stated that Mr. Tubbs had been at Warner Creek, quote, for a long time. That's Excerpt of Record 471-72. And there's no dispute that Tubbs had been to Oak Ridge previously and engaged in vandalism there. And that was important because he knew what the facility was, knew what the security features were or weren't. And I think this is most important. At sentencing, the government played a video of a movie called Pickax, in which Tubbs himself is on the video speaking out against the Forest Service regarding Warner Creek. So taken together, the totality of these circumstances provided more than enough evidence for the court to conclude that this activity was calculated to retaliate against the government and to coerce and intimidate the government in relation to legitimate Forest Service activities. I won't address the notice issue regarding the one-level upward departure because that was covered fully in the brief and counsel hasn't mentioned it here today. But that's simply another issue where there was no preservation whatsoever, no objection. And, of course, Judge Aiken did give notice in her pre-sentencing opinion that she could rely upon general departure grounds if the adjustment under 3A1.4 didn't apply for a crime of terrorism. If there are no questions, I'll finish up. Thank you. Thank you. Thank you, Your Honors. Just very briefly, with regard to the issue of the counsel said testimony, there was no testimony. It simply was a victim statement that came in with regard to whether or not there was somebody present at Oak Ridge. Are you disputing that as a factual finding? There was no factual finding, yes. There was the only statement. The only statement was from one of the victims. There was no evidence that was presented with regard to that. What evidence do you have to contest it, I guess, is what I should have asked. Well, I guess the question goes to the whether or not there was injury or the possibility of injury. And that seemed to be what the – that was what the court based its findings. I thought there was testimony from a firefighter who said by the time he arrived at the scene, the building was fully involved. And when he realized that there was somebody who occasionally slept there, he had this horrible feeling in the pit of his stomach because he realized there was absolutely nothing that firefighters could do at that point if there was someone inside. It wasn't a firefighter. It wasn't testimony. It was the victim – one of the victims, a forced service employee. I believe he may have been a part-time volunteer fireman. The only other thing I'd ask you. Counsel, I'm still – you haven't answered my question. What evidence do you have to dispute that testimony? It's in the record, and I don't see anything that disputes the veracity of it. So I'm not exactly sure what your point is. So you're saying the district court has to make a specific finding when it's of evidence or of record and in evidence, and there's nothing to contest it? Is that your position? That would be what we're suggesting here. Okay. Your position is that a victim's statement given to the court cannot be relied on by the court? The court can look to the victim's statement, but here where specific finding with regard to the enhancement relies upon the question of whether or not there was injury. We submit, Your Honor, that there was no finding. There was no evidence presented of that. The same thing with regard to the motivational element here. There has to be some basis of a finding. There was nothing within, for instance, the statements of the admission. I guess the question that raises in my mind is what obligation does the defendant have when the government offers affirmative proof on those enhancements at the sentencing hearing, but there is no countervailing evidence to join the issue to create a credibility contest? I mean, we have one version, and it's uncontested. Why can't the court rely on that at that point? What's – where is due process violated? What's unfair to the defendant if that's the state of the record? When the court is relying upon a particular – in terms of what the court applying the opinion with regard to the enhancement, there had been statements, there had been admissions of the parties. The court had every right to rely upon those admissions of the parties. Everything else that was presented that had not – was not subject to cross-examination, in other words, a witness being placed on. And this Forest Service employee was not placed on the stand as a witness. He was not subject to cross-examination. Well, but counsel obviously could have insisted by calling the witness so that the witness could be cross-examined, correct? Correct. Thank you, counsel. The case just argued is submitted. And we will next hear argument in United States v. Jonathan Christopher Mark Paul. Thank you.
judges: Tallman, Clifton, Smith